# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :

      v.                  :       Crim. No. 96-539-02

TERRENCE GIBBS         :

## GOVERNMENT'S RESPONSE TO MOTION TO MODIFY IMPOSED TERM OF IMPRISONMENT UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant Terrence Gibbs seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This Court lacks authority to grant this relief, and the motion should be denied.

## I.    Background.

Defendant Terrence Gibbs was one of the leaders of a substantial drug trafficking organization that obtained cocaine from various suppliers and resold the cocaine in Philadelphia in both powder and crack form between 1992 and 1995. After another leader, Darryl Coleman, was arrested on state charges in April 1994 and subsequently imprisoned, Gibbs assumed primary responsibility for the organization, supervising and managing the business, and recruiting individuals to distribute cocaine and collect drug proceeds. *See United States v. Gibbs*, 190 F.3d 188, 195 (3d Cir. 1999).

Gibbs was convicted of conspiring to distribute cocaine, bribing a public official, engaging in a continuing criminal enterprise, money laundering, and

using a telephone to facilitate a drug felony. At sentencing, this Court determined that Gibbs' total offense level was 46, with a base offense level of 38, and enhancements of two levels for possessing a dangerous weapon, four levels for leadership role, and two levels for obstructing justice. Under the Sentencing Guidelines, the total offense level required a sentence of life imprisonment, which the Court imposed on September 15, 1997.

In his present motion, Gibbs asserts that this sentence would not apply under current law, because the quantity that allowed a maximum sentence of life imprisonment was not charged in the indictment and proven to a jury beyond a reasonable doubt. This is not entirely correct.

The same sentence would be permissible under current law; the government would simply have to follow additional procedural requirements to obtain it. Under the current version of 21 U.S.C. § 841(b)(1)(B), a maximum sentence of life imprisonment is allowed for any offense involving more than 28 grams of crack, or 500 grams of cocaine. There is no question that the crimes of conviction in this case involved quantities far in excess of those thresholds (as well as the greater thresholds in Section 841(b)(1)(A) of 280 grams of crack and 5 kilograms of cocaine). At sentencing, in applying the then-applicable Guidelines, this Court found that the crimes involved at least 1.5 kilograms of crack and 150 kilograms of cocaine, and the Court of Appeals, describing the assessment as "conservative," affirmed it. *United States v. Gibbs*, 190 F.3d 188, 219-20 (3d Cir. 1999). And indeed, the quantity findings justify a Guidelines recommendation of

life imprisonment under the current version of the Guidelines as well (which is why Gibbs' request for relief based on recent guideline amendments has been denied, *see United States v. Gibbs*, 647 F. App'x 133 (3d Cir. 2016)).

The only difference in the law today, after the decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005), is that a jury would have to find the minimal threshold that allowed a life sentence, while the final guideline range would be advisory rather than mandatory. But these procedural rules do not apply retroactively, and therefore Gibbs did not obtain any relief from these decisions. *United States v. Gibbs*, 77 F. App'x 107 (3d Cir. 2003) (declining to apply *Apprendi* retroactively); *United States v. Gibbs*, 598 F. App'x 814 (3d Cir. 2015) (per curiam) (denying collateral relief based on *Booker*).

Now, in presenting a motion for compassionate release, Gibbs is simply trying again in a different manner to gain retroactive application of *Apprendi* and *Booker*. However, because this remedy is not available to address an otherwise non-retroactive change in sentencing law, the motion must be denied.

## II.   Discussion.

The defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling circumstances." The defendant asserts that his service of a sentence that would not be imposed under current law presents such a circumstance, allowing the Court to reduce his sentence. However, that

circumstance as a matter of law does not by itself allow relief under Section 3582(c)(1)(A)(i), and the motion must be denied.

> **A.    The Pertinent Statute Directs that "Extraordinary and Compelling Circumstances" Allowing Compassionate Release Are Defined by the Sentencing Commission.**

As recently amended by the First Step Act, Section 3582(c)(1)(A)(i) provides:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

In Section 603(b) of the First Step Act, Congress added the italicized passage that permits a defendant, after denial of a request to BOP that it sponsor a request for compassionate release, or the passage of a specified period of time after seeking BOP's acquiescence, to himself move the court for relief. Previously, only BOP could initiate a motion for compassionate release.

The defendant argues that the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction. But that is not true. The First Step Act left unchanged a critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Here, the applicable policy statement provides no basis for a sentence reduction based on concern regarding the length of a previously imposed sentence.

As before, Congress has directed the Sentencing Commission to determine the permissible grounds for compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, Section 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." And finally, as stated, Section 3582(c)(1)(A) conditions judicial relief on fidelity to the applicable policy statement, which appears at U.S.S.G. § 1B1.13.

This policy statement is binding under the express terms of Section 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory.

This issue was resolved by the Supreme Court in *Dillon v. United States*, 560 U.S. 817 (2010), which the defendant does not address, but makes clear that the statutory requirement in Section 3582 that a court heed the restrictions stated by the Sentencing Commission is binding.

*Dillon* concerned a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2), which allows a sentence reduction in limited circumstances upon the Commission's adoption of a retroactive guideline amendment lowering a guideline range. That subsection allows such an action "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" – language identical to that which appears in Section 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release ("if it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

The *Dillon* Court held that the Commission's pertinent policy statement concerning retroactive guideline amendments (U.S.S.G. § 1B1.10) is binding, particularly its directive that a permissible sentence reduction is limited to the bottom of the revised guideline range, without application of the rule of *Booker*. *See Dillon*, 560 U.S. at 826. *Dillon* emphasized that a sentence reduction under

Section 3582(c)(2) is not a resentencing proceeding, but rather "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines," without any possibility of increase in a sentence. *Id.* at 828. The Court stressed the opening passage of 18 U.S.C. § 3582(c) – "The court may not modify a term of imprisonment once it has been imposed except that" – and the specific language of Section 3582(c)(2), which gives a court power to "reduce" a sentence, not increase it. For this and numerous other reasons – that the provision applies only to a limited class of prisoners, that Federal Rule of Criminal Procedure 43(b)(4) does not require the defendant's presence at any proceeding under Section 3582(c), and that Congress explicitly gave the Sentencing Commission a significant role in determining eligibility – *Dillon* held that the *Booker* rule is inapplicable and the Commission's relevant policy statement is controlling.

Every consideration identified in *Dillon* appears here. A motion for compassionate release rests on an act of Congressional lenity. It appears under the same prefatory language of Section 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that"), and explicitly refers to an action to "reduce" a sentence. It applies only to a limited class of prisoners, and does not warrant a full resentencing procedure. There is no basis for any conclusion other than that the statutory language is binding: a court may reduce a sentence based on "extraordinary and compelling reasons" only if "such

- 7 -

a reduction is consistent with applicable policy statements issued by the

Sentencing Commission."

Thus, the defendant's position, that Congress aimed to afford courts

discretion to determine in individual cases whether there is a basis for a sentence

reduction, simply ignores the text of the actual statutes, not to mention the *Dillon*

decision.[1]

In sum, in amending Section 3582(c)(1)(A), Congress granted inmates a

new procedural right: the opportunity to bring motions for compassionate release

directly. In so providing, Congress did not alter the substantive criteria governing

motions for compassionate release, which remain subject to binding guidance of

the Sentencing Commission.

---

[1] While some defendants have raised the rule of lenity in this context, it is inapplicable. The rule of lenity applies only to "interpretations of the substantive ambit of criminal prohibitions, [and] to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1990). Section 3582(c)(1)(A) authorizes only a reduction of a sentence; it neither prohibits conduct nor imposes penalties. And in any event, application of the rule of lenity "requires more than a difficult interpretative question. Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010) (citing *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks and citation omitted)). The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). Here, the statutory provision is unambiguous.

## B.     The Governing Policy Statement Does Not Permit Relief Based on Disagreement With the Length of a Sentence.

Based on the Congressional mandate, the Sentencing Commission set forth the policy statement in Section 1B1.13 governing motions for compassionate release. In defining the extraordinary circumstances that may warrant relief, the Commission focused on medical condition, age, and family responsibilities. Application note 1 states that "extraordinary and compelling reasons exist under any of the circumstances set forth below":

(A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Addressing subsection (D), BOP has issued a regulation defining its own consideration of requests for compassionate release. That regulation appears at Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1. It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases identified by the Sentencing Commission: medical condition, age, and family circumstances.

Neither the policy statement nor the BOP regulation provides any basis for compassionate release based on reevaluation of the severity of the original sentence. In this case, the defendant does not set forth anything more. He asserts that he is rehabilitated (which by itself, under 28 U.S.C. § 994(t), may not be the basis for relief), and that the original mandatory minimum sentence was too extreme. This does not set forth an allowable basis for relief consistent with the

- 10 -

Sentencing Commission's policy statement. Nor does any change in sentencing law, which may be addressed in other provisions.

This is not surprising. The compassionate release statute is part of an intricate sentencing scheme. The 1984 sentencing reform of which this statute is part was animated by the Congressional determination "that sentencing in the Federal courts is characterized by unwarranted disparity and by uncertainty about the length of time offenders will serve in prison." S. Rep. 98-225, at 49. Thus, Congress created the Sentencing Commission to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices . . . ." 28 U.S.C. § 991(b)(1)(B). *See also Peugh v. United States*, 569 U.S. 530, 535 (2013); *United States v. Booker,* 543 U.S. 220, 264 (2005) (majority opinion of Breyer, J.); *Koon v. United States*, 518 U.S. 81, 113 (1996) ("The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system."). Justice Breyer, an architect of the sentencing reform effort, explained:

The Sentencing Reform Act (SRA) has two overall objectives. *See Barber v. Thomas*, 130 S.Ct. 2499, 2505 (2010); *see also* United States Sentencing Commission, Guidelines Manual § 1A3, p. 1.2 (Nov.1987) (USSG) (addressing statutory objectives). First, it seeks greater honesty in sentencing. Instead of a parole commission and a judge trying to second-guess each other about the time an offender will actually serve in prison, the SRA tries to create a sentencing system that will require the offender actually to serve most of the sentence the judge imposes. *See Mistretta v. United States*, 488 U.S. 361, 367 (1989) ("[The SRA] makes all sentences basically determinate"). Second, the Act seeks greater fairness in sentencing through the creation of Guidelines that will increase the likelihood that two offenders who engage in roughly similar criminal behavior will receive roughly similar sentences. *See Barber, supra*, at 2505 (noting that Congress sought to achieve, in part, "increased sentencing uniformity").

*Setser v. United States*, 566 U.S. 231, 244 (2012) (Breyer, J., dissenting).

Thus, the Act calls for consistent sentencing, and provides extremely limited grounds for later alteration of a sentence. Specifically, Section 3582(c) prohibits a court from modifying a sentence of imprisonment except in three limited circumstances: (1) where extraordinary and compelling reasons warrant a reduction, § 3582(c)(1)(A); (2) where another statute or Federal Rule of Criminal Procedure 35 expressly permits a sentence modification, § 3582(c)(1)(B); or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the Commission and certain other requirements are met, § 3582(c)(2). *See also United States v. Washington*, 549 F.3d 905, 915-16 (3d Cir. 2008) (holding that a sentence may only be modified pursuant to Section 3582(c) or Rule 35, and a district court otherwise lacks jurisdiction to modify a previously imposed sentence; here, the district court vacated a sentence upon learning that the defendant had been prosecuted

under a false name he provided, in order to conceal his full criminal history, and

the Court of Appeals reversed this action as exceeding the court's jurisdiction).

Under Section 3582(c), "[i]n the sentencing context, there is simply no such thing

as a 'motion to reconsider' an otherwise final sentence." *United States v. Dotz*,

455 F.3d 644, 648 (6th Cir. 2006).

Accordingly, consistent with the statutory scheme, the grounds for

compassionate release identified by the Commission are all based on inherently

individual circumstances – health, age, and family responsibilities – and, not

surprisingly, nothing remotely comparable to the application of new sentencing

doctrines to thousands of offenders.

Indeed, the remedy sought by the defendant would mark a profound

alteration of the sentencing scheme carefully designed by Congress. It would

afford individual judges the authority to, in effect, exercise a parole power that

Congress specifically acted in 1984 to abolish, or exercise a clemency function

that the Constitution affords exclusively to the President. *See* U.S. Const., Art. II,

§ 2, cl. 1. A judge could, for instance, impose a mandatory sentence as dictated by

Congress, and then after the judgment became final act to reduce it, upon a

declaration that imposition of the sentence in the particular case is

"extraordinary" and unwarranted. This power would inevitably result in varying

determinations by different courts, demolishing the certainty and consistency in

sentencing that Congress required through passage of the Sentencing Reform

Act. The suggested course would also undermine the finality of sentences, a

concept "which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

To be sure, Congress may authorize retroactive relief. In Section 404 of the First Step Act, for example, Congress authorized full retroactive application of Sections 2 and 3 of the Fair Sentencing Act of 2010. But Congress did not authorize use of Section 3582(c)(1)(A) to accomplish the same result with respect to other sentencing provisions. Instead, as before the First Step Act, Congress directed the Sentencing Commission to identify extraordinary circumstances that may warrant compassionate release. The Commission has set forth a sensible set of reasons, focused on individual circumstances, that do not contemplate resentencing based on a reassessment of the appropriate criminal penalty for the original criminal conduct.[2]

Under still-controlling law, Congress has tasked the Sentencing Commission, not the courts, with determining what constitutes an "extraordinary and compelling reason" that can justify compassionate release. In a detailed and still-controlling policy statement, the Commission has set forth four categories of reasons that qualify. The reasons that the defendant relies upon in his motion do

---

[2]  Likewise, it would be inappropriate for the Bureau of Prisons, in the exercise of its authority to recommend compassionate release, to assume for itself the authority to reject lengthy sentences in individual cases based on disagreement with Congressional penalty enactments.

not align with any of the reasons given by the Commission. Because of this, he is statutorily ineligible for compassionate release.

### C.   The District Court Decisions Supporting the Defendant's Position Are Unpersuasive.

Some district courts have agreed with the proposition that a court may now itself define the circumstances that permit compassionate release, unfettered by the Commission's policy statement, but all present scant reasoning, and none addresses the extensive arguments presented here concerning the clear statutory language. Indeed, none recognizes or addresses the significance of the Supreme Court's *Dillon* decision in addressing this issue. *See United States v. Rodriguez*, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Brown*, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. O'Bryan*, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); *United States v. Beck*, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Cantu*, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020).

Other courts disagree, and concur with the government's view that the policy statement remains controlling. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *3-4 (S.D. Ala. Aug. 13, 2019); *United States v. Shields*, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019); *United States v. Willingham*, 2019 WL

6733028, at *2 (S.D. Ga. Dec. 10, 2019) (disagreeing with decisions cited above, stating, "[t]hese cases, however, rest upon a faulty premise that the First Step Act somehow rendered the Sentencing Commission's policy statement an inappropriate expression of policy. This interpretation, and it appears to be an interpretation gleaned primarily from the salutary purpose expressed in the title of Section 603(b) of the First Step Act, contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision"); *United States v. McGraw*, 2019 WL 2059488, *2 (S.D. Ind. 2019); *United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Washington*, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019); *United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Overcash*, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019); *United States v. Hunter*, 2020 U.S. Dist. LEXIS 4305, at *5 (S.D. Ohio Jan. 9, 2020); *United States v. York*, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019). *Cf. United States v. Rivernider*, 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019) ("In support of his claim under subdivision (D), the defendant makes a variety of assertions: his convictions and sentence are unlawful, he has served substantially more time in prison than he expected to serve when he pleaded guilty, he has been mistreated and treated unfairly, and his minor children are suffering in his absence. None of these factors is comparable to the Commission's criteria for compassionate release.").

Notably, to date, only three district court decisions – *O'Bryan*, *Urkevich*, and *Maumau* – have granted the relief the defendant seeks here: a grant of relief based solely on rehabilitation (which the statute states cannot be the sole basis of relief) and the revision of sentencing law, specifically the alteration to penalties under 18 U.S.C. § 924(c) that Congress decreed in the First Step Act but expressly declared non-retroactive. *See* First Step Act § 403.[3]

In every other case in which a district court has articulated a power to consider circumstances not identified by the Sentencing Commission, the relief granted was in fact based on the traditional considerations of health, age, and

---

[3]  In *Brown,* 2019 WL 4942051, the Iowa district court suggested that relief may be afforded based on the length of 924(c) sentences, but denied the request, as the defendant had not yet completed the sentence that would be imposed under current law; the court instead suggested that the Department of Justice support a request for executive commutation of the sentence.

In *Fox*, the Maine district court stated, "I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change." 2019 WL 3046086, at *3. But the court then evaluated, and denied, the defendant's request on the basis of the considerations outlined in the policy statement, declining to consider the defendant's argument that changes in sentencing law and disparate treatment of other offenders presented extraordinary circumstances warranting relief. The court reasoned: "I conclude that those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release. Despite Fox's understandable frustration over the unfairness he perceives in others getting sentencing benefits while he does not, the compassionate release provision is not an end-run around the Commission's authority to make certain Guideline changes not retroactive or Congress's decision to reduce sentences for some crimes but not others, or a means to redress perceived disparities with other sentenced defendants." *Id.* In other words, this case as well stands in opposition to the relief sought here.

family circumstances that are identified by the Commission as possible extraordinary circumstances. *See Cantu*, 2019 WL 2498923, at *1 (identifying the defendant as "elderly," and the government agreed that home confinement was warranted); *Beck*, 2019 WL 2716505 (relief granted on the basis of invasive cancer and BOP's purported history of indifference to the defendant's medical condition); *Rodriguez*, 2019 WL 6311388 (defendant's claim was exclusively based on medical condition, and the court upon analysis denied the motion); *Bucci*, 2019 WL 5075964 (defendant is sole available caregiver for ailing mother); *Schmitt*, 2020 WL 96904 (defendant suffered from metastatic breast cancer); *United States v. Cantu-Rivera*, 2019 WL 2578272 (S.D. Tex. June 24, 2019) (although the court suggested that the policy statement is not binding, its grant of release was nonetheless based on the defendant's advanced age and significant health issues, as well as the fact that he would receive a lower sentence under current law).

Thus, there is little authority for the remedy that the defendant seeks. *See Willingham*, 2019 WL 6733028 at *2 (an assertion that the defendant's "sentence [was] too harsh, especially as compared to that of" other defendants, did "not even move the needle toward the extraordinary and compelling circumstances that must exist before the Court should grant compassionate release"; an "attempt to relitigate the propriety of her sentence under the auspice of 'compassionate release' . . . falls completely flat.").

- 18 -

Further, to the extent that some courts have perceived expanded judicial authority in considering motions for compassionate release, those decisions are without legal basis. *Cantu* presents the most extensive discussion, and is most frequently cited. It devotes most of the pertinent discussion, 2019 WL 2498923, at *3-5, to the indisputable proposition that the portion of the guideline commentary that conditions relief on a BOP motion, consistent with the earlier statute, is no longer operative, as a policy statement may not conflict with a governing statute.[4] From that premise, however, *Cantu* unjustifiably concludes "that when a defendant brings a motion for a sentence reduction under the amended [Section 3582(c)(1)(A)], the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief." *Id.* at *5.

In support, *Cantu* relies first on the proposition that Congress aimed to increase the award of compassionate release, and the fact that the title of Section 603(b) of the First Step Act is "Increasing the Use and Transparency of

_____

[4] Application note 4 of Section 1B1.13, which states the prior requirement of a BOP motion, has not been amended in light of the First Step Act, as the Commission currently lacks a quorum.

Application note 4 also encourages BOP to be liberal in filing such motions and states that a "court is in a unique position to determine whether the circumstances warrant a reduction." But this language does not empower a court to ignore the policy statement's substantive directives and adopt a freestanding power to declare what circumstances may justify a sentence reduction. To the contrary, the note restates the court's obligation to adhere to consideration of the circumstances identified by the Commission.

Compassionate Release." But as the court explained in its lengthy rejection of *Cantu* in *United States v. Lynn*, 2019 WL 3805349, at *3-4 (S.D. Ala. Aug. 13, 2019), there is much in the First Step Act that expands the availability of compassionate release, from the authorization of direct defense requests to a sentencing court, to provisions requiring notification and assistance to prisoners who may prepare requests.[5] Nothing in the Act, however, revises the explicit directives in Sections 994(t) and 3582(c)(1)(A) requiring compliance with the Sentencing Commission's policy statement. And as *Lynn* correctly concluded, "[i]f the policy statement needs tweaking in light of Section 603(b), that tweaking must be accomplished by the Commission, not by the courts." 2019 WL 3805349, at *4; *see id.* at *4 n.5 (noting it is not "easy to believe that Congress, which plainly desired the Commission to pour content into 'extraordinary and compelling reasons,' intended to eliminate that content by allowing defendants to move for compassionate release.'").

Next, *Cantu* relies on application note 1(D), which authorizes a reduction if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the

---

[5]  Besides allowing direct defense motions to the court, removing BOP as the gatekeeper, the First Step Act added subsection (d) to Section 3582, imposing enhanced requirements on BOP to notify prisoners of their right to seek compassionate release, with particular requirements (including mandates that BOP assist certain prisoners in preparing motions) where the inmate is terminally ill or suffers from a physical or mental impairment limiting the ability to prepare a motion. Additionally, the First Step Act added subsection (e), which requires a report by BOP to Congress in three years regarding the consideration of compassionate release motions.

defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." 2019 WL 2498923, at *4-5. Because the BOP is no longer the "sole determiner of what constitutes an extraordinary and compelling reason," *Cantu* suggests, application note 1(D) "is not applicable when a defendant requests relief under § 3582(c)(1)(A)," and the district court, rather than the BOP, now may identify extraordinary and compelling reasons warranting a sentence reduction other than those set forth elsewhere in the policy statement. *Id.* Neither conclusion follows. First, even where a defendant moves for compassionate release, it remains sensible to permit BOP to use its expertise to identify additional extraordinary circumstances warranting compassionate release, whether specific to the defendant or applicable generally, as set forth in the program statement. And second, even if application note 1(D) does not apply where a defendant moves for compassionate release, *Cantu* does not explain how that note or any other portion of Section 1B1.13 grants courts unfettered authority to determine what constitutes an extraordinary and compelling reason untethered to those set forth elsewhere in the policy statement. In other words, even after the First Step Act, Congress has "left the task of fleshing out the universe of extraordinary and compelling reasons to the Commission, not the judiciary. The Court is not freed by congressional silence but bound by Commission policy statements that Congress has expressly required the courts to follow." *Lynn*, 2019 WL 3805349, at *5. *See United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020)

("Congress in fact only expanded access to the courts; it did not change the standard.").

In granting relief in *United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020), the court took a different tack, stating:

> The court briefly notes that, in reaching this conclusion, its reasoning is slightly different from some of the other district courts cited above. A few of those cases frame the First Step Act as shifting discretion from the Bureau of Prisons Director to the district courts. *See, e.g., Fox*, 2019 WL 3046086 at *3 ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *Brown*, 2019 WL 4942051 at *4 (same). But in this court's view, the district courts have always had the discretion to determine what counts as compelling and extraordinary. The courts have never been a rubber stamp for compassionate release decisions made by the Bureau of Prisons. . . . The key change made by the First Step Act is not a redistribution of discretion, but the removal of the Director's role as a gatekeeper.

*Maumau*, 2020 WL 806121, at *4 n.5.

But *Maumau*, like all the decisions in agreement with it, entirely ignores the statutory command that, when exercising the discretion it possesses, a district court may only grant a reduction that "is consistent with applicable policy statements issued by the Sentencing Commission." *Maumau* never addresses that provision, or the Supreme Court's interpretation of such language in *Dillon*. It is because of that provision that a court cannot grant relief based solely on disagreement with the length of a sentence, or based on application of an otherwise non-retroactive change in sentencing law, as the Sentencing Commission has not authorized any reduction on such bases.

As stated, the defendant's suggestion could severely undermine the plain goals of the Sentencing Reform Act to reduce disparity in sentencing and to afford offenders, victims, and the public a clear understanding at the time of sentencing of the actual punishment imposed. It would remove certainty in sentencing, allowing individual judges years after the fact to revise terms based on their then-determined views of the reasonableness of sentencing law. Whatever the merit of such a plan, it may only be instituted by Congress.

## III.   Conclusion.

The defendant does not set forth any basis for compassionate release authorized by law, and his motion for relief should therefore be denied.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT ZAUZMER
Assistant United States Attorney
Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail, postage prepaid, upon:

> Mr. Terrence Gibbs
> No. 30947-037
> FCI Petersburg Medium
> P.O. Box 1000
> Petersburg, VA  23804


> */s Robert A. Zauzmer*
> ROBERT ZAUZMER
> Assistant United States Attorney

Dated: February 27, 2020.